### HENDERSON *et al. v.* WILLIAMS.

1. Where, by will, property was bequeathed and devised to named trustees for the sole and separate use of a daughter of the testator for life, which property at her death was to vest absolutely in fee simple in such child or children as she might have then living, and the will conferred upon the trustees large

powers as to making sales of the trust property and reinvesting
the proceeds thereof, and also the power to use the *corpus* of
the estate for certain specified purposes, the trust created by
the will was for the benefit of those entitled to take in re-
mainder as well as for the life-tenant, although the trustee was
not invested with the legal title to the estate in remainder
beyond what was involved in the execution of those powers.

2. Where a successor of the original trustees (who, by the terms
of the will, was clothed with the same powers which were
thereby conferred upon them) invested money arising from the
trust property in land, and took the title thereto to himself as
trustee for the life-tenant only, "to have and to hold for her
and her heirs and assigns forever," this did not, although the
will was made after the passage of the "married woman's
law" of 1866, execute the trust or vest any title to the land
absolutely in the life-tenant, but the property thus acquired
became immediately impressed with the trusts imposed by the
will upon the property originally belonging to the trust estate
for which the land purchased by the trustee was thus substi-
tuted.

3. In such case, a trustee who, in the event it should "become
desirable to use any part of the *corpus* of said trust estate for
the improvement thereof, or for the more comfortable support
of said *cestui que trust*" (the life-tenant), had "power and
authority to allow the *corpus* thus to be used, upon the written
application and consent of said *cestui que trust*," and who, in
the proper exercise of this power, executed a promissory note
and secured the same by a deed to land, represented, in a suit
brought for the collection of that note, both the life-tenant and
the remaindermen; and though they were not made parties to
the action, a judgment therein against him bound them all.
February 7, 1896.

Complaint for land.     Before Judge Clark.     Newton
superior court.     March term, 1895.

W. L. H. Henderson, and Ida F. and Mary L. Henderson,
minors, by their next friend W. L. H. Henderson, on Feb-
ruary 27, 1894, sued Williams to recover a tract of 150
acres of land in Newton county, the south half of 300 acres
deeded by Ira E. Smith, administrator, to W. L. H. Hen-
derson, trustee for his wife Mary E. Henderson, of whom
the plaintiffs claimed to be the heirs at law. By amend-
ment they alleged: On January 4th, 1884, W. L. H.

Henderson, as trustee for Mary E. Henderson, and in her life, made a note for $1,500, payable January 1, 1885, to Swann, Stewart & Company.  The consideration of this note was supplies to be furnished the trustee by Swann, S. & Co. for 1884, to enable him to make a crop by himself and tenants for that year.  To secure the payment of this note Henderson, trustee, with the written consent of his wife Mary E., on January 4, 1884, deeded to Swann, S. & Co. the land now sued for.  Bond to reconvey was given by Swann, S. & Co.  The note, deed and bond constitute an equitable mortgage, and the heirs at law of said Mary E. have the right to redeem the same, if the same were not already redeemed in her lifetime by said trustee, as hereinafter set forth.  The consideration of the note and deed did not pass to Henderson, trustee, on the date of the note, but was to pass to him by Swann, S. & Co. in supplies to make a crop for 1884 as needed and called for by him and his tenants, and at said date it was not known by the trustee and Swann, S. & Co. that the trustee would need and call for the amount of the note in supplies for 1884.  The trustee did not call for and receive from Swann, S. & Co. on the note and deed, in supplies for 1884, more than $606.60; and hence the consideration of the note and deed has failed to the extent of $893.40, which amount is not chargeable to plaintiffs on the note and deed.  Said $606.60 has been fully paid in cotton delivered to S., S. & Co., at various dates stated, by reason of which the note should be cancelled.  On March 6, 1888, S., S. & Co. were put into possession of the land by virtue of a void decree against said trustee and a void judicial sale thereunder against his consent, and have since that date, by themselves and assigns, possessed and occupied the land.  On February 14, 1889, they conveyed to J. W. Roberts, and on August 14, 1890, Roberts conveyed to Williams.  Plaintiffs prayed that Williams be decreed to reconvey the land to them in the terms of the bond; that the note be cancelled; that Williams

be compelled to account for rents, etc.; and that he be compelled to deliver to them said land.

Williams answered: The consideration of the note was the delivery by Swann, S. & Co. to Henderson, trustee, of four promissory notes for $100 each, dated January 30, 1882, and due respectively October 1, November 1, and December 1, 1882, and the delivery to Henderson, trustee, of a mortgage on a house and lot belonging to the trust estate, which notes and mortgage were signed by Henderson, trustee, and his *cestui que trust;* also balances on accounts incurred by the trustee for 1883 for his tenants or farm hands, aggregating $322.75, besides interest, for supplies furnished by S., S. & Co. to the tenants to make crops on the land of the trust estate to raise an income for the benefit thereof; and also for supplies etc., to be furnished for the comfortable support of the *cestui que trust* for 1884, and which were furnished by S., S. & Co. for said purposes, to the amount of $576.75, and for supplies etc. to the tenants for 1884 to make crops on the trust estate and raise an income therefrom, and which supplies were furnished by S., S. & Co. to the amount of $———. It is probably true that at the date of the notes the parties did not know how much supplies etc. the maker would call for and receive in 1884. The trustee did call for and receive from S., S. & Co., during that year, supplies etc. in excess of $606.60. Payments were made to S., S. & Co. by the trustee or his tenants, as set forth, but were properly applied to open accounts other than said notes, and with the direction, knowledge and consent of the trustee. The land was purchased by Henderson, trustee, for his wife, with money derived by her from the estate of her father, Needham Bullard, and under his last will, the sixth item of which is as follows: "The property given, bequeathed and devised in this will to my daughters Mary and Ella E., I give, bequeath and devise unto my friends Robert A. Murphey and Thomas Jones in trust for the sole and sep-

arate use and benefit of my said daughters for and during
the term of their natural lives, free from debts, contracts
or liabilities of any present or future husband, and at their
death to vest absolutely in fee simple in such child or chil-
dren as they may respectively have living at the time of
their deaths; said trustees or their successors to have full
power to sell and reinvest or change the investment of any
or all of said trust property, without an order of the court
of chancery, by and with the written consent of said *cestui
que trusts*. And upon the death or resignation of a trus-
tee, said *cestui que trust* shall have the power to nominate
and appoint by deed of appointment a new trustee without
an order of court. And should it become desirable to use
any part of the *corpus* of said trust estate, for the improve-
ment thereof, or for the more comfortable support of said
*cestui que trust*, the said trustees or their successors shall
have power and authority to allow the *corpus* thus to be
used, upon the written application and consent of said *cestui
que trust*." At the March term, 1885, of the superior
court, S., S. & Co. sued Henderson, trustee, upon said note,
to which suit he filed defense, and at the March term, 1886,
they obtained a verdict, judgment and decree for $1,081.58
principal, with interest, etc. Execution issued thereon,
and S., S. & Co. made and had recorded a deed to the land
to Henderson, trustee, and caused the execution to be levied
on the land. Under this levy the land was sold by the
sheriff in March, 1888, according to law, and S., S. & Co.
bought it and took the sheriff's deed thereto, and any and
all right of redemption which Henderson, trustee, or his
*cestui que trust*, may have, ceased at and after the sheriff's
sale. At the time of the filing of their suit plaintiffs were
barred by the statute of limitations, more than three years
having elapsed since the date of the verdict, judgment and
decree. The various matters put in issue by the plaintiffs,
except their claim for rents, were put in issue in said suit,

and adjudged adversely to defendant therein, and plaintiffs are concluded thereby.

Upon the trial plaintiffs introduced the deed of Smith, administrator, to Henderson, trustee, made March 25, 1882, the conveyance being simply to "W. L. H. Henderson, trustee for his wife Mary E. Henderson, . . for her and her heirs and assigns forever." Henderson testified: Mary E. Henderson died intestate on March 30, 1893, leaving as her only heirs at law the plaintiffs. The land in dispute is worth on an average from 1888 to the present time $300 per annum for rent. Witness bought this land and other land as trustee for his wife, and paid for it mostly with money received by him as her trustee from her father's estate under his will. There was other evidence as to the value of the land for rent, tending to corroborate the testimony of Henderson. Plaintiffs introduced the $1,500 note, which had credits thereon amounting to $501.63. Also, the deed by Henderson, trustee, to S., S. & Co., of January 4, 1884, conveying the property in dispute, and reciting "that whereas it has become desirable and necessary to use a part of the surplus of the trust estate, of which the said W. L. H. Henderson is trustee, to wit" (the property described in the deed and the plaintiffs' petition), "for the purpose of cultivating the land of the said trust estate, and the comfortable support and maintenance of the said *cestui que trust*, now, in consideration of $1,500 in hand paid, and for said purposes, this deed is made." Also, with and as part of this deed, written application to Henderson as such trustee, signed by Mrs. Henderson, to sell said land, "for the purpose of continuing farming operations on the lands belonging to my trust estate and the maintenance of my home in Oxford, and hereby give my consent to the foregoing deed to Swann, Stewart & Co., for said purpose." Also, the bond for titles made by said S., S. & Co. to Henderson, trustee. The note, deed and bond were introduced by

plaintiff to show that the papers taken together constituted an equitable mortgage.

Defendant introduced the original record in the suit of Swann, S. & Co. against Henderson, trustee, upon said notes. The declaration described the trust estate; set out the deed to S., S. & Co., with the written consent and request of the *cestui que trust*; the giving of the bond for titles; the purpose of the creation of the debt; that S., S. &' Co. had furnished the trustee for said purposes farming utensils, supplies, etc., to be used in cultivating and improving the land and for the comfortable support of the *cestui que trust*, that the trustee refused to pay the note and redeem the land; and prayed that the trust estate be decreed to be liable for the debt, and that the income thereof, if necessary, be applied to the payment of the debt, or for such other judgment or decree as equity and the circumstances of the case might require. Copy of the note, of the deed and of Mrs. Henderson's consent was attached. This petition was filed February 23, 1885, and due and legal service thereof was acknowledged by the trustee. On March 18, 1886, S., S. & Co. amended their petition, alleging that the consideration of the note sued upon was as is set out in the answer of Williams, above stated; and praying that the trust estate be decreed liable for the debt sued on, etc. This amendment was allowed over objection. A bill of particulars was attached to this amendment. To this suit the defendant, Henderson, trustee, pleaded, denying the indebtedness and claiming that it was not a proper charge against the trust estate. He also pleaded a set-off for cotton furnished from September 10 to November 22, 1884 (the dates of payments set out in the petition of the present plaintiffs), amounting to $686.16. He also pleaded, that the items charged for the four $100 notes above mentioned were paid off and fully discharged; that the notes were not delivered up to be charged on said account; that the items charged up against defendants for

the tenants were not correct, because he did not assume the payment thereof; and usury in the deed.    There was a verdict for S., S. & Co. for $1,081.68 principal, with interest etc., and finding the trust property subject.    On this verdict a decree was rendered against Henderson, trustee for his wife, to be levied on that portion of the trust estate now in controversy.    Plaintiffs objected to the admissibility of the levy as above set forth, on the grounds, that the verdict and judgment is void because not in accordance with the prayer in the petition and amended petition, the prayer being that the rents and proceeds of the land be subject to the debt, and the judgment ordering the land to be sold to satisfy the debt; and that Mrs. Henderson, being a party to the deed, and the title to the land being in her absolutely, by virtue of the deed from Ira E. Smith to Henderson as trustee for her, she was a necessary party, and not being a party to said suit and being dead, her heirs at law were not estopped in this suit to recover the land.    The objection was overruled.

Plaintiffs then reintroduced Henderson, "to prove the consideration of the note and deed, and to show the same was paid off and that there was nothing due on the note, to which counsel for the defendant objected on the ground that the questioning raised facts sought to be proved by the witness was *res adjudicata*."    The objection was sustained.

Defendants then introduced, over the objection of plaintiffs, the execution issued from the judgment in favor of S., S. & Co. against Henderson, trustee, and against the land described in the judgment, the levy of the *fi. fa.* thereon, and sale thereunder to S., S. & Co. for $1,400, part of the money being received by defendant in *fi. fa.*; also, the deed of reconveyance from S., S. & Co. to Henderson, trustee, reciting the *fi. fa.* and judgment, note, deed and bond; also, the sheriff's deed conveying the land to S., S. & Co., and the deeds from S., S. & Co. to Roberts and from Roberts to Williams; also, a certified copy of the last

will of Needham Bullard, the nature of which has been sufficiently above indicated. Plaintiffs objected to the admission of the will, because "it does not change the fact that the titles to the land in dispute is not the said Mary E. Henderson at her death by virtue of the deed from Ira E. Smith, adm'r, to said W. L. H. Henderson as trustee for Mary E. Henderson, and on which plaintiffs rely for recovery." The objection was overruled.

Defendant introduced written deed of appointment by Mary E. Henderson of her husband to act as her trustee of her trust estate under her father's will, with all the rights and powers conferred on the trustees, or their successors, in said will. This appointment was made March 4, 1879, was accepted by Henderson on the same day, was accompanied by the written refusal of R. O. Murphey to act as her trustee and declaring that he had never acted as such; and the appointment recited the item of the will above mentioned in full, and set forth the fact of the death of Thomas P. Jones. There was also evidence for defendant, that he has been in possession of the land since the fall of 1891, and that it is worth $150 per annum for rent.

The court directed a verdict for defendant. Plaintiffs excepted to each of the rulings stated.

*John A. Wimpy*, for plaintiffs.
*James M. Pace*, for defendants.

LUMPKIN, Justice.

The facts appear in the reporter's statement. A discussion of the law applicable is deemed unnecessary, for the reason that the opinion of Chief Justice Bleckley in *Headen et al.* v. *Quillian et al.*, 92 *Ga.* 222, in principle covers fully and aptly the controlling points involved in the present case.      *Judgment affirmed.*