## BAILIE et al. v. CAROLINA INTERSTATE BUILDING AND LOAN ASSOCIATION et al.

Where in the year 1886 a trust was raised for the benefit of a. married woman during her life, with remainder over to her children, and by the instrument creating the trust, power was conferred upon the trustee to manage the trust estate, and in his discretion to make changes in the investment, and to that. end the trustee was authorized, with the written consent of. the life-tenant during the continuance of her estate and without her consent after her death, to pledge, mortgage, sell,. exchange or otherwise dispose of all or any portion of the trust property, the trust thus created was an active, not a. passive one, and remained active until executed. It extended. over both the life-estate and the remainder, and was not executed as to the life-tenant eo instanti upon its creation, nor would it become executed after her death during the minority of any of the children. And when, during the continuance of such a trust, the trustee in the management of the trust- estate subscribed to the capital stock of a building and loan association and executed to it notes secured by deeds to the. trust property, as a means of raising money to be used, and which was in fact expended by him, in the improvement of the trust property, the powers conferred were well exercised, and the trust property was liable for the indebtedness thus. secured.

Argued November 2,—Decided November 16, 1896.

Petition for injunction, etc. Before Judge Callaway. Richmond county. September 7, 1896.

George N. and Joseph A. Bailie and Louisa Bailie Pollard brought their petition against the Carolina Interstate Building & Loan Association, George A. Bailie trustee, Sarah R. Bailie life-tenant, and against the receivers of said association. Petitioners are the children of George A. and Sarah R. Bailie, and remaindermen under a deed of April 19, 1886, from George A. Bailie to James E. Harper styled a trustee. From this deed it appears that the con—

sideration thereof was love and affection of the grantor for his wife Sarah R., and her children by him.   The conveyance was, "unto said party of the second part, upon the trust and limitations herein mentioned, his successors and assigns."   The conveyance was of twenty acres of land. The habendum clause was, to hold the property "unto the said party of the second part, his heirs, successors in office, and assigns, upon the uses, trusts and limitations hereinafter expressed, that is to say, in trust nevertheless to and for the sole and separate use, benefit and behoof of Sarah R. Bailie, wife of the said party of the first part, for and during the term of her natural life, free from the debts, liabilities, contracts or control of her present or any future husband as such, with remainder at her death to her child or children by the present husband then in life, the child or children of a deceased child to stand in the place of a parent, and the distribution to be per stirpes and not per capita. But should said Sarah R. Bailie die leaving no such child or issue of such child her surviving, then with remainder to said George A. Bailie, or his heirs.   If at any time the net income of said real estate, or other property real or personal into which it may be converted as hereinafter provided, should fall short of the sum of one hundred dollars per month or twelve hundred dollars per annum, then and in that event the [said] Sarah R. Bailie shall, for each and every year in which the net income falls short of said sum, be entitled to receive from the corpus of the estate such a sum yearly as will make up the deficiency and make the income received by her equal to twelve hundred dollars over and above all taxes, insurance and repairs.   And the trustee for the time being, for the purpose of raising money with which to pay said deficiency, is authorized by instrument in writing in which said Sarah R. Bailie joins, to pledge, mortgage, sell and convey, privately or publicly, without the order of any court, a sufficiency of said real or personal property at his discretion to enable the payment of said

deficiency to be made. And the trustee for the time being, unless restricted as hereinafter mentioned, for the purposes of managing said trust estate and changing the investment thereof, is hereby authorized at any time by instrument in writing in which said Sarah R. Bailie voluntarily joins during her life, and without her joining after her death, to pledge, mortgage and sell, exchange or otherwise dispose of all or any portion of the estate real and personal as he may deem best, the pledgee, mortgagee, purchaser or other interested party not being required to see after the proper application of the proceeds, and such reinvestments to be held upon the same uses, trusts and limitations as the original property was held, and so from time to time to change the investments whenever and as often as he deems it advisable. Should the office of the trustee at any time become vacant by the death, resignation and removal of any trustee from the State or from any other cause, any trustee being permitted hereby to resign at any time he so desires, the said Sarah R. Bailie by instrument in writing executed before two witnesses may appoint her husband George A. Bailie or any other fit and proper person in the place of the said party of the second part or any successor. And the person so appointed shall at once upon acceptance of the appointment become invested with all the power and authority herein conferred upon said party of the second part, if the instrument so appointing him so provide; but if the said Sarah R. Bailie so desires, she is authorized to restrict the power and authority of any succeeding trustee to those conferred under the terms and provisions of the code of Georgia and the amendments thereto, and in the event of such restrictions being imposed the same shall be valid and binding. The trustees under this deed are relieved, however, from the duty of making annual returns to any court."

The petition alleged: Under this deed 20 acres more or less in the city of Augusta were conveyed, which land was entirely vacant with the exception of two or three small

houses thereon, and was of the value of $50,000. The original so-called trustee, Harper, resigned April 19, 1886, and Sarah R. Bailie in pursuance of the supposed power under the deed appointed George A. Bailie trustee in the place of Harper, which appointment was accepted by Bailie April 19, 1886, and in pursuance of which he has been in possession of all the property passing under the deed ever since. There is now pending in the city court of Richmond county, a court of law without equitable jurisdiction, an action brought July 15, 1895, by the building and loan association against George A. Bailie as trustee and Sarah R. Bailie, for $7,841.48, for which judgment is prayed against the defendants generally, and particularly against the property set forth as security in the instruments annexed to the petition in said case; copy of which with the exhibits and amendments is attached. Said petition shows that plaintiff therein is a corporation of North Carolina, and that said Bailie, claiming to be the trustee of the property hereinbefore specified, conveyed a large portion thereof on May 25, 1891, to said association to secure a loan of $2,500, and on October 30, 1891, to secure a loan of $7,500, which conveyances and obligations representing the receipt of said money were duly signed by George A. Bailie as trustee for Sarah R. Bailie and children, and joined in by Sarah R. as life-tenant. Said association afterwards amended its petition by setting out a copy of the deed from Bailie to Harper, and averred that under the terms of said deed Bailie was given full power upon consent of the life-tenant to make the transaction set out in the papers of May 25, 1891, and October 30, 1891; and afterwards further amended by alleging that the association had failed and its assets been placed in the hands of said receivers, and asking that the suit be allowed to proceed in the name of the receivers. Petitioners in the present case deny that the powers in the deed of April, 1886, are still of force, or were of force at the time of the attempted

making of said contracts of May 25, and October 30, 1891, for the reasons hereinafter set out; and deny that said powers, if held to be in existence at said time, were sufficient to authorize the so-called trustee, if he was their trustee, which they deny, to make the contract represented by the instruments of those dates. The powers in said deed did not authorize the trustee to borrow money to make improvements upon the property, nor authorize the trustee himself to create the necessity for the purpose of using said power, the estate at the time not being indebted to any person, being only liable for ordinary governmental charges. Said powers did not authorize the trustee as such, in the name of the trust-estate and for the supposed use and benefit of the trust-estate, to become a stockholder in said North Carolina corporation and charge the trust assets with the obligations, liabilities, dues, penalties and restrictions imposed by its charter, rules and by-laws on its members and stockholders, which are onerous in the extreme. Without any authority whatever said so-called trustee on May 25, 1891, subscribed for twenty-five shares of stock in the association, and on October 30, 1891, for seventy-five shares, of the par value of $100 each, and thus illegally incurred an obligation of $10,000 on the part of the trust property, and thereupon the association issued its stock certificate to him as trustee for the 100 shares. This subscription and the fees paid for the stock enabled the so-called trustee as the representative of the trust-estate to borrow money from said corporation, which he did to the extent of $10,000. For the purpose of securing these loans the corporation, after issuing the stock had the same transferred to it, and held the same as security for said loans represented by the obligation of May 25, and October 30, 1891, made by the trustee and life-tenant, who also as additional security conveyed to it a large quantity of the land of the trust-estate as set out in deeds of the same dates. There was no necessity for the trustee to incur such obligations, and petitioners

have never ratified nor approved the same; they are not binding upon the trust-estate nor petitioners, but said action was a misapplication of the trust-estate, which was known to said company. Petitioners are apprehensive that judgment may be rendered against the trustee or the trust-estate in the suit above mentioned, and it is necessary for them, not being parties thereto, to apply to the court of chancery and object to the further progress thereof, before any judgment should be rendered against the so-called trustee, which may be claimed to bind the trust-estate and petitioners. The association prays judgment for $7,387.50, with interest at six per cent. from July 24, 1895, which is contrary to the laws of North Carolina, the Supreme Court of which State has expressly directed said receivers as to the mode in which they shall settle with all the debtors of the association [setting out the terms of said direction. See 25 S. E. Rep. 450.] Notwithstanding this direction and though the amount of the loan upon said seventy shares of stock was only $7,502.30 and on the twenty-five shares only $2,681.18, the total on July 24th being $10,183.48, and the credits by payments made to which said trustee is entitled on the loan on seventy-five shares amount to $5,133, and payments on the loan on twenty-five shares to $1,711.91, the total payment of $6,844.91, leaving a balance due of $3,338.57, yet the receivers refused to settle with the trustee on the payment of such sum, but insist that the trust-estate should only be allowed one half of the payments made on the stock, claiming that the trustee and trust-estate is liable as a stockholder for the general debts of the association, and only propose to allow a credit of $2,795.98; all of which is inequitable and unjust to petitioners, and arises from unauthorized action of the so-called trustee in investing in stock not authorized by the laws of Georgia, and which was known to the association, and also in making the loan thereon for the purpose of erecting improvements upon the property, which is unauthorized by the powers

in the trust deed, and which impose no such duty upon the so-called trustee, and which he was under no obligation to do for the benefit of the trust-estate of petitioners, but in so doing acted upon his own direction; the only powers given the trustee in the deed to borrow money being to raise the annuity due to Sarah R. Bailie of $1,200 each year, but on no occasion has he done this, and at no time has she received the annuity of $1,200. At the time the contracts of May 25, and October 30, 1891, were made, the powers of the trustee were exhausted, because they were annexed to the office of trustee and depended for their existence and exercise upon the "trustee for the time being," when as a matter of fact there was no such trustee of the trust-estate upon the existence of which said powers were predicated, it having become executed when made, the trust-deed being for the benefit of a married woman for life, with legal remainder in her children, there being no duty imposed upon the trustee for the benefit of the remaindermen, their interest being fully protected by the law and no necessity existing for them to have a trustee, as they were not entitled to possession until the end of the life-estate, nor necessity for a trustee for them afterwards, this duty being solely to manage the estate so as to give the life-tenant an annuity of $1,200, which she could do herself, and to change the investment if desired from time to time, to do which alone does not authorize the creation of a trust-estate. As Mrs. Bailie was a married woman, under the law of Georgia she did not need a trustee nor could a trust be created for her benefit; nor did the trustee hold for petitioners as remaindermen, having no duty to perform for them; and even if said broad powers are still of force (which petitioners deny, claiming that said powers ceased to exist when the necessity for the trustee ceased to exist and upon the execution of the trust), they do not authorize the trustee to make any investment which the law itself does not authorize, but simply provide easy methods to make an investment

when one was authorized, but did not authorize the investment in said stock. The trustee and life-tenant have committed acts as aforesaid to the permanent injury of petitioners, have permitted a portion of the taxes to accumulate and remain unpaid, so that the life-estate in the property is ended and petitioners are entitled to enter at once thereon and receive the property free from all restrictions. When the suit at law was brought petitioners ascertained for the first time the condition of affairs. They pray, that the action in the city court be enjoined until final decree; that the trust be declared to have been executed when the deed was made, and the legal effect of the deed to pass title for life to Sarah R. Bailie with remainder to petitioners; that the powers in the trust deed being predicated upon the supposed existence of the trust be held nugatory and void; that the subscribing for stock in the association, making payments thereon from the trust-estate, and pledging the same as well as the title to the trust-estate as security, were acts nul tiel the trusteeship and void; that a receiver be appointed to take charge of the trust-estate and hold it subject to the further order and decree of the court; that the deeds of May 25 and October 30, 1891, be decreed void and cancelled as clouds on the title of petitioners; for an accounting showing what is the principal debt with interest at six per cent. to July 24, 1895, and also what has been paid by said trustee to the association, and what is the interest thereon from the date of the payments until July 24, 1895, and what is the balance remaining unpaid; that the association and receiver be required to produce certain books, papers, records, etc.; and for general relief.

By amendment it was alleged: This is but one of many transactions by the trustee. He has borrowed large sums from other building associations, as set out in an exhibit of an account rendered by him, and conveyed practically all of the trust-estate, and illegally "invested and improved" plaintiffs out of their estate. The estate is now practically

insolvent, and the whole will be lost to plaintiffs, through the illegal action of the trustee in seeking to permanently improve the vacant trust-estate by borrowing money and erecting buildings thereon. The trustee has not the means to respond to a judgment against him for his illegal acts. Besides being trustee he was the local agent of the association at Augusta. His compensation to be received was two per cent. of all sums collected by him in payments in stock or interest or instalments on loans made by the company, and this amount was received by him on all the payments made on the debt incurred by him as trustee. In so making said loans he did not represent the trust-estate, but said association. Petitioners did not know of the loan made said trustee until long afterwards, and have objected to his said actions when known. His efforts have permanently improved the estate to four times its former value as vacant land.

To this petition the defendants (except George A. and Sarah R. Bailie) demurred on numerous grounds, and made answer from which the following appears: The value of the land conveyed by George A. Bailie to Harper, trustee, did not exceed $25,000. Harper was duly and regularly appointed trustee; full and absolute power was conferred by the deed upon the original trustee for the purpose therein named, and George A. Bailie succeeded to all the powers of the original trustee, by proper appointment duly made by the life-tenant. The city court had jurisdiction of the case sought to be enjoined. The defendants in that case, George A. Bailie as trustee for petitioners, and Sarah R. Bailie, at the appearance term of the case, filed their demurrer and subject thereto their plea and answer. On May 9, 1896, said demurrer came on to be heard before the judge of that court, and was overruled except as to question of individual liability of Sarah R. and George A. Bailie. (Copies of these proceedings are attached.) The city court has concurrent jurisdiction over suits against trust-estates,

and having first taken jurisdiction, a court of equity will neither enjoin the suit nor oust the jurisdiction of the city court in the premises. On April 19, 1886, the life-tenant, exercising the power of appointment conferred upon her by the trust deed upon the resignation of Harper, refused to restrict his powers to those given in the code, as she had a right to do, but appointed her husband to succeed him in the office of trustee in the manner prescribed by the deed, "with all the power and authority conferred upon the original trustee by the terms of said deed." Said powers were conferred upon the trustee, Bailie, as successor in the trust, and are now and were of force at the time he executed the contract with the association; said powers were executed in the manner prescribed by the deed, and were sufficient to authorize Bailie, as trustee for petitioners and Sarah R. Bailie, to make the contract referred to, to borrow money of the association, and in the management of the trust-estate to apply the same to the improvement of the trust. The question of borrowing money and making improvements upon the trust-estate was a matter left solely to the trustee in the management of the estate, and the improvements made by him have enured to the benefit of the trust property. He was thoroughly familiar with the scope and intent of the trust under the trust deed, and the same was made by him individually for the purposes therein contained. His powers did authorize him as trustee, with concurrent action of the life-tenant, to become a stockholder in the association. His application to become a member of the association was for loan stock, and was made for the sole purpose of borrowing to the amount of $10,000, which was made to him as trustee at different times for the two loans. This money was lent to him to improve the trust-estate and for no other purpose, and was so applied by him, and if any part of it was diverted to any other purpose defendants have no knowledge thereof. Under the trust deed the lender of the money is expressly relieved from.

looking after the application of the same. In the exercise of the powers of trustee and pursuant to the requirements of the association, the trustee executed his obligation in the nature of a bond and secured payment thereof by pledging the title to certain realty of the trust-estate to the association, and the life-tenant voluntarily joined therein as required by the terms of the trust deed. The stock was also transferred to the association under its rule requiring the same as collateral security. The defendant executed its obligation to reconvey the property. There was nothing irregular or illegal in the transaction, nor were said acts of the trustee in excess of his legal authority under the deed and under the law. The trustee, in the exercise of his discretionary powers, acted in good faith. While the money lent the trustee has been applied to the improvement of the trust-estate and enured to the benefit of petitioners, they propose fraudulently to hold the benefit of said improvements, which were in the nature of purchase-money, and return no equivalent to these defendants. Defendants do not know whether there existed any necessity for the trustee to borrow money, and are not concerned with the inquiry or knowledge of this fact; but petitioners had full knowledge thereof and knew that the improvement was being made with the money of the association, and neither of them at any time objected or gave notice of their objection, but have acquiesced therein. The right of determining the necessity of borrowing money for the improvement of the trust-estate, under the deed of trust, was lodged solely in the trustee and rested in the exercise of the discretionary powers conferred upon him. Petitioners cannot call into question the exercise of such powers, nor can a court of equity review the same, in the absence of allegations making a clear case of mismanagement, waste or abuse, nor does the exercise or validity of said powers depend upon petitioners' approval, they being minors when the trust was created and when the contract with the asso-

ciation was made. It is not true that petitioners ought to be made parties in the city court. They are there represented by their trustee. On March 6, 1896, counsel of record for the trustee and life-tenant orally moved the court to make petitioners parties defendant, which the court declined to do, holding that they were represented by the trustee. It is not true that on May 25, 1891, and October 30, 1891, the powers of Bailie as trustee were exhausted, but on the contrary he was the active trustee for the time being, duly appointed and vested with all the powers of the original trustee. While it is true the trust was for the benefit of a married woman for life, the remainder is not vested until the death of the life-tenant, and as yet the remaindermen are uncertain. If the act of 1866 executed the trust as to the life-tenant, it certainly had no effect upon the remainders, which are contingent. The legal title is vested in the trustee, and the trust was created for the life-tenant as well as for the remaindermen, and the trustee holds the legal title in any view for the purpose of the execution of the powers set forth in the trust deed. Under the deed of trust he is charged with the duty of raising an annuity for the life-tenant, and with the management of the estate as he will deem best in making reinvestments, and in the exercise of all other powers given him under the trust deed. It is not true that any act in connection with Bailie as trustee in transactions with either of these defendants has brought any permanent injury to petitioners, nor is it true that taxes have accumulated and have remained unpaid by the trustee. If so, these defendants are in no wise responsible therefor. Neither the life-tenant nor the remaindermen have any right to the possession of or entry upon the trust property as a matter of law, while said powers and the execution thereof are vested in the trustee and are exercised by him.

George A. Bailie as trustee and Sarah R. Bailie answered, not contesting the allegations of the petition. George A.

Bailie alleged, that he had thought that if he could get a sufficient amount of money to improve the trust-estate it would ultimately be for the benefit of the estate, but it appears now that this was a mistake and that the trust-estate is largely involved in debt; that the income from the trust-estate is not sufficient to meet the taxes, insurance, assessments and interest due upon the money borrowed from the association, and has not been for some considerable time; that the charges against the trust-estate do not decrease while the income from the estate is steadily decreased by reason of a failure to obtain tenants as expected, the failure of the trust-estate to appreciate in value as expected by Bailie when the money was borrowed. He asked that the court would give such direction to the matter as would protect the interest of the trust-estate in his hands.

Upon the hearing, beside the pleadings appeared the written application made by Bailie as trustee, which set out that he desired to subscribe for 100 shares of the loan stock of the association and borrow $10,000 thereon with which to improve the other vacant property of the trust-estate far in excess of its value, and which real estate together with the stock he would pledge as security therefor. It also appeared that George A. Bailie was the local agent of the association at Augusta, and one of the board or committee passing upon the desirability of loans and recommending them to the association, and in this capacity he recommended this loan to the association, and upon this it was accepted and the transaction made by the association set out in the petition; and that for his services in approving loans and in making collections of interest on them as they fell due, Bailie, as local director at Augusta, receives five per cent. commission.

The injunction was refused, and petitioners excepted.

*Frank H. Miller* and *William K. Miller*, for plaintiffs.
*Charles Z. McCord* and *J. S. & W. T. Davidson*, for defendants.

SIMMONS, Chief Justice.

On April 19, 1886, George A. Bailie, by a deed the material portions of which are set out by the reporter, conveyed to Harper a certain tract of land in the city of Augusta, in trust for Sarah R. Bailie, the grantor's wife, for life, with remainder over to her children. Harper accepted the trust, and resigned, and the life-tenant appointed the grantor trustee in his stead, the appointment being in writing, and conferring "all the power and authority conferred under the original trust, by the terms of said deed." The execution of the deed, the acceptance of the trust by Harper, his resignation, and the appointment of Bailie and Bailie's acceptance, took place on the same day. For the purpose of placing improvements upon the land conveyed by the deed, Bailie, as trustee, borrowed money from the Carolina Interstate Building & Loan Association, subscribing to stock in the association, and as security for the loan transferred this stock to the association and executed to it deeds to the land. Subsequently the association filed in the city court of Richmond county a suit against Bailie, as trustee for his wife and children, and against Sarah R. Bailie, for the recovery of a balance alleged to be due upon the loan, and praying a special judgment against the land; and pending this action the children of Bailie brought their petition to the superior court to enjoin the suit in the city court, and for other relief, claiming that Bailie had no power, under the deed in question, to borrow the money or convey the land as security therefor. The questions made by the petition appear from the reporter's statement.

In construing an instrument of this character, the cardinal rule is to seek the intention of the maker; and that intention should be upheld, unless it clearly contravenes some rule of law. That this grantor intended to create a trust which should be an active, and not a passive one, and which should extend over both the life-estate and the remainder, we think is clear; and there is no rule of law which

will be contravened by carrying out this intention. It is not essential to such a trust that the legal title should be vested in the trustee further than is involved in the execution of his powers. *Headen* v. *Quillian, 92 Ga.* 220; *Henderson* v. *Williams, 97 Ga.* 709. The nature of the remainder is therefore of no consequence; nor does it matter whether, under the act of 1866, the legal title to the life-estate vested in the life-tenant. The property conveyed was a large tract of unproductive land in a city. The purpose of the grantor was to make a suitable provision for the support of his wife and children, and that the property should be made to produce income. It was provided that the wife should receive from it at least $100 per month above "all taxes, insurance and repairs"; and in order to accomplish this the trustee was authorized to mortgage or sell the property. It was provided that, unless restricted as thereinafter mentioned, the trustee, "for the purpose of managing said trust estate and changing the investment thereof, is hereby authorized at any time, by instrument in writing in which said Sarah R. Bailie joins during her life, and without her joining after her death, to pledge, mortgage, sell or exchange or otherwise dispose of all or any portion of the real estate and personal property as he may deem best," and "from time to time to change the investments whenever and as often as he may deem it advisable." It will be seen from this that the trust was to continue after the death of the life-tenant. It is evident also that the grantor contemplated that he should be the trustee himself. It was provided that the trustee might resign at any time he so desired, and that Mrs. Bailie might by instrument in writing appoint her husband, the grantor, or any other fit and proper person as trustee; and as we have seen, immediately upon the execution of the deed the trustee named therein resigned, and the grantor was appointed in his stead, with all the powers conferred upon the original trustee. The powers conferred by the deed are about as

broad as it is possible to confer upon a trustee; and we think there can be no doubt that the grantor intended that he should have full power to borrow money upon the property in the way he did, and for the purpose for which that money was borrowed.     The rule in a case like this is that a trustee is invested with sufficient power to execute the trust; and in order to determine the power of the trustee the courts will look to the character of the trust estate.     *Miller* v. *Redwine*, 75 *Ga.* 133.     Taking into consideration the nature of the property in question, it was clearly necessary, in order to carry out the intention of the grantor, that the power to borrow money for the improvement of the property should exist.     We are not prepared to hold that the power was not well exercised because the money was borrowed from a building and loan association, and a subscription to stock of the association made for that purpose.     This is the usual mode of obtaining loans from such associations; and a similar transaction by the trustee was upheld by this court in the case of *Harvey* v. *Cubbedge*, 75 *Ga.* 793.

*Judgment affirmed.*